Williams v. Donnelly.

GEORGE R. WILLIAMS, TRUSTEE, APPELLANT, V. MICHAEL
DONNELLY ET AL., APPELLEES.

FILED MARCH 17, 1898.   No. 9515.

Non-Negotiable Instrument: ASSIGNMENT: DEFENSE. A non-negotiable chose in action is subject in the hands of an assignee thereof to all equities which were of force between the original parties thereto prior to the assignment, but not subject to equities of which he had no notice, existent between his assignor and a third person.

APPEAL from the district court of Douglas county. Heard below before SCOTT, J. *Affirmed.*

*Wharton & Baird,* for appellant.

References: *Connecticut Mutual Life Ins. Co. v. Stinson,* 62 Ill. App. 319; 2 Wait, Actions & Defenses 250; Bishop, Contracts sec. 1189; *Quimby v. Wood,* 35 Atl. Rep. [R. I.] 149; *Martin v. Richardson,* 68 N. Car. 255; *Connecticut Mutual Life Ins. Co. v. Bulte,* 45 Mich. 113; *Jack v. Davis,* 29 Ga. 219; *Smith v. Rogers,* 14 Ind. 224; *Bush v. Lathrop,* 22 N. Y. 535; *Ely v. McNight,* 30 How. [N. Y.] 97; *Timms v. Shannon,* 19 Md. 296; *Cutts v. Guild,* 57 N. Y. 229; *Richardson v. Woodruff,* 20 Neb. 132; *Johnson v. Payne,* 11 Neb. 269; *Young v. Brand,* 15 Neb. 601; *McCreery v. Schaffer,* 26 Neb. 173.

*Charles Offutt, contra.*

References: *Clippinger v. Fuller,* 10 Kan. 377; *State v. Winn,* 19 Wis. 323; *Van Shaack v. Robbins,* 36 Ia. 201; *Huston v. Markley,* 49 Ia. 162; *Martin v. Ragsdale,* 49 Ia. 589; *Jefferson Land Co. v. Grace,* 57 Ark. 423; *Fargason v. Edrington,* 49 Ark. 107; *Livingston v. Wright,* 88 Ga. 33; *Willard v. Ames,* 130 Ind. 351; *Hagaman v. Commissioners of Cloud County,* 19 Kan. 394; *Griswold v. Wilson,* 36 Ia. 156; *Murray v. Lylburn,* 2 Johns. Ch. [N. Y.] 441; *Livingston v. Dean,* 2 Johns. Ch. [N. Y.] 479; *Davis v. Barr,* 9 S. & R. [Pa.] 137; *Mullison's Estate,* 68 Pa. St. 212; *Bloomer v. Hen-*

derson, 8 Mich. 395; *Croft v. Bunster*, 9 Wis. 457; *Bush v. Lathrop*, 22 N. Y. 535; *Moore v. Metropolitan Nat. Bank*, 55 N. Y. 41.

HARRISON, C. J.

In this action, commenced in the district court of Douglas county, the appellant sought the foreclosure as a first lien of a mortgage for its alleged unpaid amount of $17,000. The mortgage was executed by Michael Donnelly, of date January 4, 1890, and delivered to the mortgagee, the Lewis Investment Company of Des Moines, Iowa, and by it assigned to appellant of date December 8, 1891. The property involved was situate in Boggs & Hill's Second Addition to Omaha. The National Bank of Norwich, New York, of defendants in the action, filed an answer and cross-petition in which it asserted its right to, and asked foreclosure of, the liens of certain certificates of tax sales and receipts for delinquent taxes on the property paid subsequent to the sales for taxes; and further, that they be declared a first lien. Foreclosure of the claims was decreed and the bank, for the aggregate sum of its liens, was given priority over that of the appellant. The latter in appeal to this court presents the one question, the right of priority of the liens.

Of the facts disclosed by the pleading and record on which the claim of the appellant was and is predicated were the following: There was a statement of the execution and delivery of the mortgage in suit by Michael Donnelly to the Lewis Investment Company as security for the payment of the indebtedness of the former to the latter, as evidenced by a promissory note or bond with interest coupons attached; that the mortgage contained a condition in terms as follows:

"It is further expressly stipulated and agreed that the said party of the first part shall pay all taxes or public rates and assessments on said real estate now due, or hereafter to become due, to whomsoever laid or assessed, and including personal taxes, before the same shall become

delinquent, and shall keep all buildings on said premises insured for not less than $17,000 so long as the indebtedness secured hereby shall remain unpaid, the policy or policies for the same to be delivered to said party of the second part, and the loss, if any, to be made payable to said party, and in case of a failure so to do, the party of the second part, its successors or assigns, may pay such taxes and insure said buildings, and any sum paid for taxes and insurance shall be considered as a part of the indebtedness secured hereby and shall draw interest at the same rate as said principal sum, and shall be included in any judgment which may be rendered on said bond; and if default shall be made in the payment of principal or interest, or for insurance or taxes as herein provided, then the whole indebtedness secured hereby may, at the option of the holder, at once become due and collectible without further notice, and the holder hereof may at once proceed by foreclosure, or in any other lawful mode, to make the amount of said bond, with interest, and all sums paid for insurance or taxes as above provided."

It was further pleaded that "The said Lewis Investment Company is a legal corporation incorporated under the laws of the state of Iowa; that said company, in pursuance of the authority conferred in its articles of incorporation, by vote of its stockholders and directors legally entered, issued and negotiated its certain debenture bonds; that about the 27th day of February, 1890, said company issued its debenture bonds known as 'Series B,' in the sum of $1,000,000, in denominations of $500 each, from one to one hundred inclusive, all made payable to D. Boardman, trustee, at the First National Bank of Ithaca, New York, bearing interest at six per cent, payable semiannually and running ten years from date; that in connection with the execution and delivery of said bonds, and for the purpose of securing payment of the same, the said Lewis Investment Company entered into a written agreement to and with the said Boardman, trustee, bearing date February 27, 1890, whereby the company cove-

nanted and agreed that it would assign and deliver to
said Boardman, trustee, certain first class real estate
mortgage and other evidences of indebtedness" (we now
quote from the agreement), "all of which shall be first
liens on real estate appraised at not less than two and a
half times the sum loaned thereon, to an amount which
shall fully and at all times equal the amount of outstand-
ing bonds of this issue and five per cent in excess thereof.
All of which mortgages or other loans shall be carefully
and prudently made on inspected and approved security.
The bonds or notes, together with the mortgages securing
the same and the assignment of mortgages to said Doug-
las Boardman, trustee, are to be delivered to the latter
and subject to the privilege of exchange of securities here-
after provided.

"It was further covenanted and agreed that the said
Lewis Investment Company shall be understood and
bound in all cases to guarantee the title good in the bor-
rower, in the case of each mortgage delivered to said
Boardman as trustee, and to guaranty each mortgage to
be the first lien on the real estate covered thereby, except
the current taxes, not delinquent, and shall obtain from
the mortgagor insurance to a reasonable amount upon
the buildings covered by the respective mortgages
wherever said buildings constitute any considerable por-
tion of the security. Each loan or mortgage shall be ac-
companied by a certificate of title from the attorneys of
the said company certifying to the above facts, and also
by a certificate of insurance, stating the amount of insur-
ance, the company, when insurance expires, and that the
policy is held by the Lewis Investment Company; or, if
preferred by the trustee, the abstract of title and the in-
surance policies shall be delivered to him.

"It is further agreed that the Lewis Investment Com-
pany may exchange any security held by the trustee, at
any time, for other securities to the same amount equally
acceptable and approved by him, and that said company
will pay to the trustee a fee for his services equal to one-

half of one per cent on the amount of mortgages orig-
inally deposited with the trustee or exchanged for other
mortgages; and further, that they will pay the reasonable
charges and expenses of an examiner or inspector to be
appointed by the trustee to inspect the real estate covered
by the mortgages or other securities offered by said com-
pany as collateral for the debenture as aforesaid.

"It is further understood and agreed that said trustee
shall have the right to reject any mortgages offered as col-
lateral to these bonds which shall not, on inspection, meet
his approval or prove satisfactory, and the Lewis Invest-
ment Company reserves the right to take up any mort-
gage placed as collateral, before the maturity thereof, if
it shall so elect, replacing the same by mortgage or other
security equally acceptable to the trustee. It is further
agreed that no bonds shall be issued by the trustee unless
protected by mortgages as above provided, and that no
bond shall be valid for any purpose or binding upon the
Lewis Investment Company, or upon any other person
or persons, until the same has been properly counter-
signed and certified by the trustee as provided on the back
of said bonds. And in case of default on the part of the
Lewis Investment Company in paying interest due on said
debenture for more than sixty days, or in payment of the
principal sum due on said bonds at the maturity thereof,
then said trustee is hereby authorized and empowered to
collect the amount due on said mortgages by legal pro-
cess, or by the sale of the same at public or private sale,
as may seem for the best advantage of the holder of the
debenture, and with the least loss to the said company.

"The said Douglas Boardman promises and agrees to
accept the trust created hereby, and to do and perform the
services required in carrying out the provisions of the
trust for the compensation above specified. And in case
of his death or inability to perform the duties of the trust
before the maturity of said bonds, then George R. Will-
iams, of Ithaca, New York, is hereby appointed his suc-
cessor, with all the power, duties, and obligations created

by this instrument or imposed upon said Boardman as trustee by law, as fully as if said Williams had been first appointed trustee herein."

Some time after the agreement Boardman died and the duties of the trust devolved upon Williams, the appellant herein, and the mortgage in suit, as we have before stated, was assigned to him as trustee December 8, 1891. The assignment was recorded of date January 11, 1896. The investment company failed to pay the interest due on bonds January 1, 1896, and Donnelly failed to pay interest on the mortgage debt due of date January 1, 1895, and to pay taxes assessed against the mortgaged property. Before the institution of this action the investment company became insolvent and made a voluntary assignment to one Nelson Royal for the benefit of creditors.

The lien of the bank had its origin in the following state of facts: On November 9, 1891, William G. Ure purchased at tax sale lot 10 of the property included in the mortgage in suit for the delinquent taxes of the year 1890; and on the same day lot 9 of the property covered by the Donnelly mortgage was purchased at tax sale by John Ledwich for delinquent taxes for the year 1890. Each purchaser received a treasurer's certificate of tax sale. Each purchaser afterwards paid amounts of taxes which were levied on the lot bought by him and which were not paid by the owner but allowed to become delinquent. Both parties, on January 24, 1893, sold and assigned to the Lewis Investment company the certificates and the receipts for taxes on the property paid by them respectively after tax sale, and in December, 1894, the certificates, etc., were assigned to the bank as security for the payment of an amount of money then loaned by it to the investment company. The loan was in good faith and without notice of the agreement between the appellant and the investment company. It is not contended but that all things in regard to the taxes, the sales, the certificates, the receipts, the payments, and the assignments were regular, and the liens for taxes existing, of force, and the fore-

closure or enforcement proper. It is, however, urged that they were not, in the hands of the investment company, or its assignee, the bank; superior and prior to the lien of the mortgage held by appellant.

At the outset of his argument the counsel for appellant states the propositions to be noticed as follows:

"First—That under the terms of the agreement, by which the mortgage in question was assigned to the appellant, the Lewis Investment Company was legally bound to pay the taxes in question and protect the appellant's mortgage as a first lien on the premises, and that whatever rights the Lewis Investment Company took under the assignment to it of the tax liens in question were necessarily subject to the appellant's mortgage.

"Second—That the rights which the Lewis Investment Company acquired by the assignment to it of the tax liens in question were limited and controlled by the provisions of the mortgage in controversy and the provisions of the agreement under which the mortgage was assigned to the appellant, and were merged in the mortgage of which the Lewis Investment Company was the owner, subject to the prior rights of the appellant as assignee or pledgee of the mortgage.

"Third—That the Lewis Investment Company could assign to the National Bank of Norwich no greater rights to the tax liens in question than it possessed, and as the rights which it had in the tax liens were subject to the mortgage of the plaintiff, it necessarily follows that the rights which the National Bank of Norwich acquired under the assignment from the Lewis Investment Company to it are subject to the mortgage of the appellant."

For the bank the grounds of the discussion are set forth thus:

"It is not alleged in the pleadings, or established by proof, that any of the debenture bonds, to secure the payment of which the $17,000 mortgage was assigned to Williams, trustee, were ever negotiable or sold by the trustee, or that any of them are or ever were outstanding.

"2. Waiving the first proposition, as the tax sales were made to Ure and Ledwich, and these men were the 'original purchasers' at the tax sales, the certificates therefor were, under the provisions of section 117, article 1, chapter 77, of the Compiled Statutes, assignable by indorsement, and an assignment vested in the assignee 'all the right and title of the original purchasers,' that is, of Ure and Ledwich.

"3. Conceding that the investment company, by the trust agreement and the subsequent transfer of the mortgage, incurred an obligation to the appellant to discharge the tax liens, and that the tax liens, while owned by the investment company, were secondary to the mortgage lien,—these tax liens were acquired from the state,—the appellant had no defense to any of these taxes against the state, he conceded their validity (abstract, pp. 29 and 37); the appellee acquired them in good faith for value from the holder of the legal title thereto, and is, therefore, prior in right to the appellant, who asserts a latent equity based upon a private agreement with the investment company, of which appellee had no notice.

"4. The investment company has fulfilled every covenant it made with the appellant, and there is nothing in the record on which to base a claim that the investment company has failed in any agreement it made with appellant."

It seems proper to first take up the proposition advanced for appellee, that it is not of pleading or proof that any of the debenture bonds assigned to appellant were ever negotiated or sold, or that any of them are or ever were outstanding,—in short, that there was no showing, in either pleading or proof, that the plaintiff had any valuable or real interest which entitled him to any standing in this litigation. While these matters are not very strongly pleaded, we think there are statements from which they sufficiently appear. Relative to the first division of the argument for the appellant, it may be said that by an examination and fair construction of the writ-

ten agreement which was made between the trustee and
the Lewis Investment Company, pursuant to and under
the terms of which the Donnelly bond and mortgage were
transferred by the company to the appellant, it clearly ap-
pears that the time referred to in the agreement at which,
as to any security transferred, the contract or promise
of the company should attach and be effectual to the ex-
tent the title to any property included in any mortgage,
the subject of transfer, was to be affected, that the mort-
gage should be a first lien thereon, and also as against
taxes except the current taxes not delinquent, was of the
time the security became a lien on the property by its exe-
cution and delivery to the investment company, when it
was completed, as an evidence of indebtedness and lien
therefor in favor of such company. That by the "current
taxes not delinquent" was meant taxes assessed and
payable during the year the mortgage was given, but not
at the time of such act delinquent, and with this we think
the correct construction of the terms of the agreement,
none of the taxes which had been paid by the parties who
assigned the evidences of the tax liens to the investment
company, and which it assigned to the appellee bank,
were within the import of the agreement, as the taxes
were of the year 1890 and subsequent years. But it is
needless to notice in detail the arguments. All the
propositions urged for the appellant originated in and de-
rive their being from the agreement between the Lewis
Investment Company and the appellant, which we have
hereinbefore quoted, and unless, by reason of it, they are
potent, have no force; by it equities arose between the
company, the assignor of the bank, and a party other
than the original parties to the instrument assigned.

We deem it best now to turn our attention to the cer-
tificates of purchase at tax sale, etc., which were assigned
by the investment company to the bank; of these it is as-
serted for appellant that they were non-negotiable choses
in action, and if assigned, the assignee received them sub-
ject to equities, burdens, and offsets which had attached

to or existed as to them between the immediate assignor
and other parties, specifically, in this instance, the appel-
lant. There is some contention for appellee on this point
that such certificates are evidences of a special nature,
and by reason of the transactions in which they originate,
entitled to special consideration and to special rank and
immunities as assignable claims or liens. The certifi-
cates are of statutory creation, both in substance and
form (see Compiled Statutes, ch. 77, art. 1, sec. 116), and
are by law made assignable, it being provided: "The cer-
tificate of purchase shall be assignable by indorsement,
and any assignment thereof shall vest in the assignee, or
his legal representative, all the right and title of the
original purchaser; and the statement in the treasurer's
deed of the fact of the assignment shall be presump-
tive evidence of such assignment." (Compiled Statutes,
ch. 77, art. 1, sec. 117.) Whether such certificates are
more than non-negotiable choses in action is not neces-
sary here to consider or determine; for the purposes of
the discussion, without deciding it, it may be conceded
that they are not. The rule is that the assignee of a non-
negotiable chose in action stands in the shoes of his as-
signor as to all equities existing between the original par-
ties, or, in other words, receives it subject to all equities
existing between the original parties at or prior to the
assignment (2 Am. & Eng. Ency. Law [2d ed.] 1080); but
this does not apply as to equities between the assignor
and a third person of which the assignee had no notice.
(2 Am. & Eng. Ency. Law [2d ed.] 1081, and note.) It
was said by Chancellor Kent in *Murray v. Lylburn*, 2
Johns. Ch. [N. Y.] 441: "It is a general and well-settled
principle, that the assignee of a chose in action takes it
subject to the same equities it was subject to in the hands
of the assignor. But this rule is generally understood to
mean the equity residing in the original obligor or debtor,
and not an equity residing in some third person against
the assignor." There are decisions which support a
contrary doctrine, but the weight of authority is favora-

ble to the foregoing rule, and the reasons given for it are satisfactory; hence we will adopt it, and applying it to the existent conditions developed in the case at bar the portion of the decree of the district court by which the lien of the bank was accorded priority was correct and is

AFFIRMED.

IRVINE, C., not sitting.